UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

NIKALAY RADCLIFF, #R3354                                                              PETITIONER

VS.                                                              CIVIL ACTION NO.: 4:10cv193-DPJ-FKB

SUPERINTENDENT RON KING, ET AL.                                           RESPONDENTS

OPINION AND ORDER

This matter is before the Court on Respondents' Motion to Dismiss Pursuant to § 2244(d) (Docket No. 7) and Petitioner's "Motion to Amend Response to Respondent's Motion for Dismissal" (Docket No. 8), which the Court interprets as a response to the Motion to Dismiss. In his response and a separate motion Docket No. 9, Petitioner alleges that various State-created impediments prevented him for over ten years from making a filing that would have tolled the one-year statute of limitations under § 2244(d).

In an effort to develop the facts concerning Petitioner's allegations, the Magistrate Judge ordered Respondents to submit to the Court and serve upon Petitioner affidavits or other evidentiary materials relevant to this issue, and to provide information concerning the legal assistance available to Petitioner between March 9, 1999, to March 9, 2000.[1] *See* Order, Docket No. 10. The State filed a response to the Order at Docket No. 13, and Petitioner filed a response in opposition thereto at Docket No. 14. For the reasons explained below, the Court finds that Petitioner has failed to show an entitlement to any tolling to render timely his petition filed more than ten years after the statute of limitations expired. Accordingly, the Court finds that the Motion to Dismiss should be **granted**.

---

[1] As explained *infra*, without the benefit of tolling, Radcliff's federal statute of limitations expired on March 9, 2000. Petitioner filed his action on or about November 10, 2010.

I.	FACTS AND PROCEDURAL HISTORY

On November 20, 1997, Petitioner Nikalay Radcliff was convicted of one count of rape in the Circuit Court of Lauderdale County, Mississippi. Docket No. 7–1 at 1. The same jury acquitted Radcliff on a kidnaping charge. *Id.* On December 22, 1997, the trial court judge sentenced Radcliff to twenty-five (25) years in the custody of the Mississippi Department of Corrections. Radcliff appealed his conviction and sentence to the Mississippi Supreme Court, and on February 23, 1999, the Mississippi Court of Appeals affirmed the judgment of the trial court in a written opinion. *See Radcliff v. State*, 736 So. 2d 1081 (Miss. Ct. App. 1999) (Cause No. 97-KA-01643-COA); Docket No. 7–2. Radcliff did not file a motion for rehearing in the Mississippi Court of Appeals, nor did he file a petition for writ of certiorari to the Mississippi Supreme Court.[2] Accordingly, the one-year federal statute of limitations began to run on March 9, 1999, and, without the benefit of tolling, it expired March 9, 2000, over ten years before Radcliff filed his petition for habeas relief in this Court on or about November 10, 2010.

With its Motion, the State presents records from the Mississippi Supreme Court showing that while Radcliff filed three separate applications to proceed in the trial court with a motion for Post-Conviction Relief ("PCR"), these were all filed outside the one-year limitations period for

---

[2]A prisoner who fails to seek discretionary review from the state's highest court does not receive the benefit of the ninety-day period for seeking certiorari from the United States Supreme Court. *Roberts v. Cockrell*, 319 F.3d 690, 693–94 (5th Cir. 2003). Thus, for a prisoner who stops his appeal process at the Mississippi Court of Appeals, a conviction becomes final when the time for seeking review from the Mississippi Supreme Court expires. Pursuant to Mississippi Rule of Appellate Procedure 17(b), the time for seeking review from the Mississippi Supreme Court expires within fourteen days of the entry of judgment by the Court of Appeals, or the disposition of a petition for rehearing by that court. In Radcliff's case, the Mississippi Court of Appeals affirmed his judgment of conviction on his direct appeal on February 23, 1999. Therefore, his judgment of conviction became final fourteen days later on March 9, 1999.

federal habeas relief that expired March 9, 2000, and therefore these filings did not toll the federal statute of limitations. Radcliff filed his first application for PCR on July 31, 2001, and it was denied on March 14, 2002. Docket No. 7–3; State's Exhibit C. He filed his second application for PCR on September 18, 2006, and it was denied on October 12, 2006. Docket Nos. 7–4, 7–5; State's Exhibits D and E. Radcliff filed another application for PCR on December 1, 2006, which was denied by the Mississippi Supreme Court by order filed March 29, 2007. Docket No. 7–6; State's Exhibit F. The State argues that these filings were incompetent to toll the federal habeas statute of limitations, thus, Radcliff's federal habeas petition is untimely.

From August 3, 1998 to October 28, 2003, Radcliff was housed at Wilkinson County Correctional Facility ("WCCF"). Docket No. 13–1, Exhibit A ("Drill Down Detail Report") at 1. In his response to the State's Motion, Radcliff alleges that the State created an "impediment to any correct and prompt filing to toll 2244(d) statute of limitation" due to WCCF "remov[ing] all hardback library books in preparation for Mississippi Inmate legal assistance program." Docket No. 8 at 1.

In addition to the issues at WCCF, Radcliff claims the State created impediments to his timely filing a federal habeas petition at every other facility in which he was housed for the next seven years. Specifically, Radcliff alleges the following impediments at the following facilities:

1. Kemper County Correctional Facility ("KCCF"), "2003 till 2006"— "no form of legal assistance program nor any means to access to the courts";

2. Marshall County Correctional Facility, "2006"— "law librarian . . . [was] not a person trained in law";

3. Mississippi State Penitentiary at Parchman, "February, 2007 to Oct. 2009"— "housed in 'close confinement common labor' . . . [and] . . . not given adequate

        access to the courts due to common labor field operations start[ing] at 6:30 a.m. and . . . prisoners [being] . . . spread[] out across the Mississippi State Penitentiary working so they are never called for legal assistance";

4.     Winston County Correctional Facility, transferred in "Oct. 2009"— "no law library or legal assistance"; and

5.     WCCF, transferred in "February 2010"— "law librarian was not a person trained in law . . . ."

Docket No. 8 at 2–4. On August 4, 2010, Radcliff was transferred to South Mississippi Correctional Institution, and without explanation, he asserts that the "state impediment was removed" at that time. Over three months later, on or about November 10, 2010, Petitioner filed his federal habeas petition.[3] Docket No. 1.

After this Court ordered the State to submit evidence addressing legal materials available to Petitioner during the statutory limitation period under § 2244, March 9, 1999 to March 9, 2000 (*see* Docket No. 10), the State filed an affidavit from Gia N. McLeod, Director of the Inmate Legal Assistance Program ("ILAP") for the Mississippi Department of Corrections. Docket No. 13–2. According to Ms. McLeod's sworn testimony, "[t]he Inmate Legal Assistance Program (ILAP) was established in September 1997 by [a] United States District Court order doing away with the then existing book law libraries and going to the new ILAP office." *Id*. at 1. She further provides that "at all times during 1999, Wilkinson County Correctional Facility had

---

      [3]"For pleadings submitted by prisoners acting pro se, the Fifth Circuit has recognized that a 'mailbox rule' applies and that the date when prison officials receive the pleading from the plaintiff for delivery to the court is considered the time of filing for limitations purposes. *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). It may reasonably be inferred that a prisoner delivered his petition to the prison officials for mailing on the date he signed it. *See United States v. O'Kaine*, 971 F. Supp. 1479, 1480 (S.D. Ga. 1997)." *Punch v. State of Louisiana*, No. Civ. A. 98-2867, 1999 WL 562729, at *2 n.3 (E.D. La. July 29, 1999). Accordingly, this Court will infer that Radcliff delivered his petition to prison officials for mailing on November 10, 2010, the date on which he signed the petition.

an attorney on contract to assist inmates who had legal questions . . . [and that WCCF inmates could contact the attorney] by putting in a request to see him." *Id*. Specifically addressing the "time in question, March 9, 1999, to March 9, 2000," Ms. McLeod testifies that "any inmate requesting services or information that could not be provided by the Inmate Legal Assistance program at WCCF were asked to be directed to the ILAP office at Central Mississippi Correctional Facility or the attorney for Wilkinson County Correctional Facility." *Id*. As Ms. McLeod explained, "all ILAP offices were instructed to provide all relevant statues [sic] and rules when an inmate requested court generated forms for filing, if they were not already providing that information[,] [and] [t]his included the AEDPA with habeas corpus forms." *Id*. at 2.

In addition, Ms. McLeod testifies in her affidavit about an "informational packet" which advised inmates of statutory deadlines for filing post-conviction petitions. *Id*. She admits that, prior to being revised in 2000, the packet contained "confusing language." *Id*. Specifically, she explained that, although the pre-2000 packet stated that the "time for filing a habeas corpus began running upon affirmation of the conviction, it then stated that [inmates] had three years to file a state post conviction petition and upon completion of their state remedies, they had one year to file a habeas corpus."[4] *Id*.

The State also submitted an affidavit from J. Anthony Williams. Docket No. 13–3. Mr. Williams was the "contract attorney for the Wilkinson County Correctional Facility[,]" starting

---

[4] This language was "confusing" because an inmate could file a timely post-conviction-relief petition in state court, but if he filed it more than one year after his judgment of conviction became final, it would not toll the one-year limitation under § 2244. Thus, in the absence of another statutory-tolling provision, or other relief, his federal habeas petition filed upon completion of such a state-PCR proceeding would be barred as untimely.

in 1998 and ending on January 31, 2002. *Id.* ¶ 2. According to his affidavit, Mr. Williams's primary duties were "to do legal research for inmates, to answer questions they may have about legal issues, and if the inmate requested, to review pleadings they had drafted or had filed against them." *Id.* ¶ 3. He explains that through "a face-to-face interview or by writing [him] a letter[,]" "an inmate could request federal law materials (cases, statutes, rules of court, etc.) from [him]." *Id.* ¶ 4. And he specifically testifies that his duties and services "extended principally to an inmate's post-conviction petition, his *habeas petition*, and issues concerning conditions of confinement." *Id.* (emphasis added).

In addition to the services he personally provided at WCCF from 1998 to January 31, 2002, Williams discusses other ways in which WCCF made federal legal materials available to inmates. Specifically, he testifies that "[a]t some point during this time period, WCCF also allowed inmates to request federal law research materials by mail from the Central Mississippi Correctional Facility in Rankin County or from Corrections Corporation's Delta Facility in Greenwood, MS." *Id.* ¶ 5. Further, he testifies that, "[a]t some point during this time period, WCCF installed one or more computers in its facility to allow inmates to [conduct] computerized legal research[,] [and] [t]herefrom, inmates could access federal law research materials." *Id.* ¶ 6.

Radcliff responded with his own affidavit stating that he "filed grievances to the warden about the law library [at WCCF] and was told Inmate Legal Assistance program would be coming soon." Docket No. 14 at 22. But he testifies that ILAP "was never forthcoming without the aid of Mr. Ronald Welch Former prison Advocate." *Id.* According to Petitioner's affidavit, "Mr. Welch filed repeated complaints against [the WCCF law librarian] about the inadequacy of the law library[,]" and, as a result, "[i]n 2001 Wilkinson County brought in a (woman) lawyer or

paralegal . . . to help prisoners." *Id*. He testifies that "the woman lawyer or paralegal never provide[d] [him] with the 'PCR' informational packet" and that he was "never advised to any deadline or as to what a Habeas corpus was." *Id*. at 22–23. In his affidavit, Radcliff denies having any knowledge of "an attorney at Wilkinson County by the name of J. Anthony Williams" and denies having ever been "informed that [he] could request any form of legal material from C.M.C.F. or Greenwood Delta Facility by memo or verbally." *Id*. at 23.[5]

II.     DISCUSSION

The issue is timeliness. Section 2244(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or

---

[5]Petitioner also submitted an affidavit from Arthur R. Thomas who was housed at WCCF in 1999. According to Mr. Thomas's affidavit, prisoners were never "informed [they] could receive legal materials from C.M.C.F. or Greenwood Corr. Facility by memo or verbally;" and he denies "knowledge of any attorney name[d] J. Anthony Williams providing legal service to prisoners." Docket No. 14 at 20.

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d) (1996).

The AEDPA imposes a one-year statute of limitations for the filing of a federal habeas petition. Although Radcliff asserts that the statute of limitations should be tolled because of alleged state-created impediments, the Court finds, for the reasons explained below, that he is not entitled to tolling for his petition filed over ten years after the federal statute of limitations expired.

As stated above, Radcliff's judgment of conviction became final on March 9, 1999, when he declined to file a motion for rehearing in the Mississippi Court of Appeals, and he failed to petition the Mississippi Supreme Court for discretionary review. Radcliff did not "properly file" a state motion for post-conviction relief to toll the running of the one-year federal statute of limitations for habeas relief. Nevertheless, Radcliff argues that he is entitled to equitable and/or statutory tolling due to alleged inadequacies of, or lack of access to, a law library or legal assistance at five different correctional facilities over a period of eleven years and five months, thereby resulting in his alleged lack of knowledge of the AEDPA one-year statute of limitations and a denial of his access to courts.

    A.    Equitable Tolling

With respect to equitable tolling, the Fifth Circuit has held that an inadequate law library, ignorance of the law, or lack of legal assistance do not constitute "rare and exceptional"

circumstances that warrant equitable tolling of the AEDPA limitations period.  *See Scott v. Johnson*, 227 F.3d 260, 263 n.3 (5th Cir. 2000) ("We note that an inadequate law library does not constitute a 'rare and exceptional' circumstance warranting equitable tolling."); *Felder v. Johnson*, 204 F.3d 168, 172 (5th Cir. 2000) (holding that *pro se* litigant's "mere ignorance of the law or lack of knowledge of filing deadlines does not justify equitable tolling . . . ."); *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir. 1999) (analyzing equitable tolling in habeas case and stating that "neither a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling").  Thus, Radcliff has failed to show "rare and exceptional circumstances" justifying equitable tolling.

      B.      Tolling Pursuant to 28 U.S.C. § 2244(d)

Although Radcliff sometimes refers to "equitable tolling" in his filings, he actually attempts to show an entitlement to statutory tolling under § 2244(d)(1)(B)[6] and cites *Egerton v. Cockrell*, 334 F.3d 433 (5th Cir. 2003).  *See* Docket No. 14 at 1, 5.  In *Egerton*, the Fifth Circuit held that, "to invoke § 2244(d)(1)(B), the prisoner must show that: (1) he was prevented from filing a petition (2) by State action (3) in violation of the Constitution or federal law." *Egerton v. Cockrell*, 334 F.3d at 436.

---

[6]The statute states:

> The limitation period shall run from the latest of. . . .(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed; if the applicant was prevented from filing such State action.

28 U.S.C. § 2244(d)(1)(B).

Before addressing Radcliff's allegations that State-created impediments prevented his access to the AEDPA, the Court notes that Petitioner has received physical access to the courts. First, the docket of this Court shows that on January 14, 1999—while housed at WCCF—Radcliff filed a lawsuit under 42 U.S.C. § 1983. *See Radcliff v. Sollie*, Civil Action No. 4:99cv8-TSL-AGN. In fact, during the applicable AEDPA limitations period (March 9, 1999, to March 9, 2000), Radcliff actually prosecuted his § 1983 action by filing motions, responding to court orders, and participating in an Omnibus Hearing. *See id*. Second, Radcliff filed a petition for PCR in state court on July 31, 2001, while he was housed at WCCF. He filed two (2) more petitions for PCR on September 18, 2006, and December 1, 2006, respectively, while housed at Marshall County Correctional Facility. Thus, no State-created impediment prevented Radcliff from filing petitions in federal or state court during the AEDPA limitations period or later.

Additionally, Radcliff has failed to prove any State-created impediment that prevented access to the AEDPA or knowledge of its one-year statute of limitations. As stated above, Radcliff relies on *Egerton*. In *Egerton*, the petitioner was incarcerated and his conviction became final before April 24, 1996, the effective date of the AEDPA. *Egerton*, 334 F.3d at 435. Although Egerton's federal habeas petition was untimely, he asserted that the facilities in which he was housed failed to provide a copy of the AEDPA or make other arrangements to place inmates on notice of the new one-year limitations period under AEDPA. After being given the opportunity to rebut Egerton's assertion, "the State did not avail itself of this opportunity to provide . . . any evidence whatsoever that a copy of AEDPA was available to Egerton during the limitations period, nor [that] . . . the AEDPA was available" at the facilities in which Egerton was housed. *Id*. at 438. The Fifth Circuit held that the complete absence of a copy of the

-10-

AEDPA in a prison facility "without some . . . alternative arrangements" to make the necessary AEDPA information "available" to prisoners may be considered an "impediment" under § 2244(d)(1)(B) and that the specific facts of Egerton's case warranted statutory tolling. *Id*. at 438–39.

First, Radcliff finds a State-created impediment in Ms. McLeod's admission that the pre-2000 "informational" or "post-conviction" packet available to MDOC inmates contained "confusing" language. Docket No. 14 at 1–2, 4. But the argument weakens his case. Although the language in the packet was "confusing" (and possibly misleading) as to *when* the one-year AEDPA statute of limitations began to run or was tolled, it clearly advised inmates that the AEDPA contained a one-year limitations period. Thus, *if* Radcliff read the materials and was confused, then he was also on notice of the one-year limitations period. And because Radcliff filed only one timely state-court PCR petition, which was denied on March 14, 2002, Radcliff's federal habeas petition would have been due (if he had been misled by the "confusing" language) on March 14, 2003. Nevertheless, Radcliff waited until November 10, 2010, to file his federal habeas petition. His knowledge of the AEDPA would distinguish *Egerton*.

Radcliff's case differs from *Egerton* in other ways as well. In *Egerton*, there was no access to the AEDPA—and no alternatives means for acquiring that information—for the full eighteen months Egerton's filing was delinquent. By contrast, Radcliff had access to the AEDPA through the Inmate Legal Assistance Program (ILAP) of the Mississippi Department of Corrections. *See Townsend v. Epps*, Cause No. 2:06cv199-M-A, 2007 WL 1687461 at *3 (N.D. Miss. June 8, 2007) (inmates in custody of Mississippi Department of Corrections have access to the AEDPA and other legal materials through the Inmate Legal Assistance Program); *Jones v.*

*King*, Cause No. 3:05cv356-B-S, 2006 WL 1674302 at *4-6 (S.D. Miss. June 16, 2006) (same); *Neal v. Bradley*, Cause No. 2:05cv67-M-B, 2006 WL 2796404 (N.D. Miss. Sept. 25, 2006) (same).

In the affidavit of Gia McLeod submitted by the State in this case, she testifies that "[t]he Inmate Legal Assistance Program (ILAP) was established in September 1997," that is, prior to Radcliff's incarceration and prior to his conviction becoming final. As a Mississippi federal district court has explained:

> all . . . inmates in the custody of the Mississippi Department of Corrections . . . have access to legal materials through the Inmate Legal Assistance Program. . . . All inmates are provided with a handbook upon entry into the Mississippi Department of Corrections; the handbook sets forth, among other things, the operation of the Inmate Legal Assistance Program, what assistance is provided, and how to get help from the program. Inmates are issued a new handbook after each revision. They receive guidance from the Inmate Legal Assistance Program by submitting a request form. The request need not be specific; a general request seeking assistance will result in a conference to determine the stage of the case and the next step.
>
> . . . .
>
> The post-conviction packet (approximately 140 pages) contains information regarding the state court post-conviction remedy (with supporting statutes) and "A Basic Explanation of the Appeals Process," which summarizes state court remedies as well as a brief overview of federal habeas, *including a discussion of the one-year statute of limitations period of the AEDPA*. The post-conviction packet is available to all inmates upon request.

*Neal*, 2006 WL 2796404 at *3–4 (emphasis in original).

Ms. McLeod also affirmed that during the pertinent one-year limitations period, AEDPA and habeas forms were available to WCCF inmates through the ILAP program and WCCF had an attorney on contract who was available to meet with WCCF inmates upon their request. *See* Docket No. 13–2. The WCCF contract attorney, J. Anthony Williams, confirmed in his affidavit

that he was available to WCCF inmates during this time period through "face-to-face" meetings and correspondence to do legal research, answer questions and review pleadings regarding various matters, including habeas matters. *See* Docket No. 13–3. He also testified that, "[a]t some point" prior to January 31, 2002 (*i.e.*, more than eighteen months before Radcliff was transferred), WCCF made federal law research materials available to inmates through computers installed at WCCF. *Id*.

In response, Radcliff fails to show that the AEDPA and information regarding the AEDPA one-year limitations period were not available to WCCF inmates. Instead, he asserts that he was never "informed that [he] could request" such materials and that he has no knowledge of "an attorney at Wilkinson County by the name of J. Anthony Williams." *See* Docket No. 14 at 23. As for the ILAP at WCCF, he claims that he "filed grievances to the warden about the law library and was told Inmate Legal Assistance program would be coming soon." *Id*. at 22. Radcliff submits no documentary evidence of any such "grievances."

Even if all of this is true, Radcliff essentially admits that the ILAP was "forthcoming" after the efforts of Ronald Welch, a prisoner advocate, and that, by 2001, WCCF "brought in a . . . lawyer or paralegal . . . to help prisoners." *Id*. Although he denies that he was ever advised of the AEDPA limitations period, he admits that he received at least some legal assistance as he filed his first state court PCR petition on July 31, 2001, while housed at WCCF. *Id*. at 3.[7] *See Krause v. Thaler*, 637 F.3d 558, 562 (5th Cir. 2011) (finding no "state action" and distinguishing *Egerton* because, among other things, petitioner had access to "law librarian"). Radcliff likewise

---

[7]Of course, Radcliff had already litigated a § 1983 action in federal court from January 14, 1999, to March 30, 2000. Therefore, the evidence indicates that he had already received legal assistance prior to July 31, 2001, and as early as 1999.

fails to refute that federal legal materials became available to WCCF inmates through computerized legal research eighteen months before he was transferred. In sum, even if the Court were to toll the AEDPA limitations period until the latest of these events at WCCF occurred, Radcliff's federal habeas petition would still be more than eight years overdue. These facts distinguish *Egerton*.

But Radcliff's problems do not stop there. To reap the benefits of *Egerton*, Radcliff must prove a State-created impediment for the full term of his delinquency, including his stints at other facilities. He cannot. Even if the Court were to toll the limitations period for the entire time Radcliff was at WCCF and KCCF, he still has not proven an entitlement to statutory tolling through August 4, 2010 (approximately seven years later), when he was transferred to South Mississippi Correctional Institution.

For example, Radcliff's response to the State's Motion fails to acknowledge his term of incarceration at the Mississippi State Penitentiary at Parchman from August 4, 2005, to May 22, 2006. *See* Docket No. 13–1 at 1. Mississippi federal district courts have held that the AEDPA is available to inmates at Parchman. *See Neal*, 2006 WL 2796404 at *4; *Jones*, 2006 WL 1674302 at *6. But for this over-nine-month period, Radcliff offers no evidence of any alleged State-created impediment. *See Krause*, 637 F.3d at 562 (rejecting *Egerton* argument related to one facility's law library noting that petitioner was housed in other facilities for which he made no showing of a State impediment). Radcliff has shown no entitlement to statutory tolling for this period, and even if the AEDPA limitations period were gratuitously tolled until he arrived at Parchman in August 2005, his federal habeas petition was still five years and three months late.

As for his other term at the Mississippi State Penitentiary at Parchman from February 23, 2007, to October 8, 2009 (which he acknowledged), Radcliff claims that he was "housed in 'close confinement common labor' [or c-custody status] . . . [and] . . . not given adequate access to the courts due to common labor field operations start[ing] at 6:30 a.m. and . . . prisoners [being] . . . spread[] out across the Mississippi State Penitentiary working so they are never called for legal assistance." Docket No. 8 at 3. He fails to offer any grievances from that period to substantiate his claims that he had no access to legal materials, nor does he offer any ILAP form requests that were denied. Radcliff simply has not demonstrated that he was denied access to legal materials or assistance every day, seven days a week, for nearly three years. Regardless, in *Neal*, Judge Mills rejected a prisoner's attempt to use his security classification at Parchman as justification for a State-created impediment under § 2244(d)(1)(B). *Neal*, 2006 WL 2796404 at *2. Likewise, this Court rejects Radcliff's attempt to do the same in this case.[8]

Although *pro se* pleadings are broadly construed, the Court rejects Petitioner's argument that he was unable to gain access to legal materials, through any means. His own statements indicate that access eventually existed at WCCF, he fails to account for all of his terms of incarceration after leaving WCCF, and he fails to offer documentary evidence supporting an impediment at each facility during the lengthy delinquency. Thus, Radcliff is not entitled to

---

[8]Although the Fifth Circuit does not appear to have addressed the argument, other courts distinguish *Egerton* on another applicable basis. Egerton was incarcerated when the AEDPA became effective, and the law library had no copy of the new law for the eighteen months before Egerton filed his federal petition. Here, Radcliff was incarcerated after Congress enacted the AEDPA and contends that he did not learn of the limitations period for over ten years at five different facilities. *See, e.g., Lewis v. Quartermon*, 2009 WL 1883424, Nos. 3:08-cv-1753-P, 3:08-cv-1756-P at *4 (N.D. Tex. June 30, 2009) (distinguishing *Egerton* because petitioner was incarcerated after AEDPA passed); *Heatherly v. Banks*, 2007 WL 2071801, No. 3:07cv23-B-A at *4 (N.D. Miss. July 17, 2007) (same).

statutory tolling, and his habeas petition, filed over ten years beyond the expiration of the federal statute of limitations, is untimely.

III.     CONCLUSION

For the reasons stated above, Petitioner is not entitled to equitable or statutory tolling of the federal statute of limitations for habeas corpus petitions. Therefore, the Respondents' Motion to Dismiss is **granted**, and this case is dismissed with prejudice.

**SO ORDERED AND ADJUDGED** this the 9th day of September, 2011.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE